Jaburg & Wilk, P.C.
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

David Farren (007384)
dnf@jaburgwilk.com
Jeffrey A. Silence (029143)
jxs@jaburgwilk.com
Alden A. Thomas (031900)
aat@jaburgwilk.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Diana Heckman, | Case No. |
| Plaintiff, | |
| v. | **Complaint** |
| Rio Verde Community Association, an Arizona corporation, | **Demand for Jury Trial** |
| Defendant. | |

Plaintiff Diana Heckman ("Plaintiff" or "Diana") alleges:

**PARTIES AND JURISDICTION**

1.     Plaintiff is an Arizona citizen who resides in Maricopa County, Arizona.

2.     Defendant Rio Verde Community Association (hereinafter "Defendant" or "Rio Verde"), an Arizona corporation, is a citizen of Arizona with its principal place of business located in Maricopa County, Arizona.

3.     Rio Verde is Plaintiff's former employer.

4.     Plaintiff alleges violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. (the "FLSA").

5.     This Court has federal question subject matter jurisdiction of Plaintiff's federal claims this case pursuant to 28 U.S.C. § 1331.

6.    This Court has supplemental subject matter jurisdiction of Plaintiff's state law claims this case pursuant to 28 U.S.C. § 1367.

7.    This Court has personal jurisdiction of Defendant in this action.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

9.    Rio Verde is an Arizona non-profit corporation/homeowner's association (HOA) that governs a rural community of mostly elderly residents.

10.    Rio Verde currently has more than 1,000 residents.

11.    Upon information and belief, Rio Verde has a contract with the United States Post Office (USPO) to deliver mail to its residents.

12.    Rio Verde hired Diana in 1997 to work in its community post office (the "Rio Verde Post Office").

13.    Diana has faithfully worked for Rio Verde in the Rio Verde Post Office for the past 23 years.

14.    Rio Verde hired Diana to work in the Rio Verde Post Office pursuant to a contract that described her as an "independent contractor" rather than an employee.

15.    On or about May 3, 2019, Rio Verde required Diana to sign another contract effective July 1, 2019, that again described her as an "independent contractor" rather than an employee.

16.    The forgoing contracts describing Diana as an "independent contractor" are not controlling with regard to her purported status as an independent contractor.

17.    Diana has never been an "independent contractor" providing independent, for-hire, non-exclusive services to Rio Verde; she has always been a misclassified Rio Verde employee for the past 23 years.

Diana's 23-Year Employment with Rio Verde

18.    Based on the terms of the forgoing contracts, the economic reality of her position, the work she performed, and other factors considered under federal and state

2

1    laws, including the FLSA, Diana is and has been a misclassified "employee" of Rio
2    Verde for the past 23 years.

3        19.    Diana was paid a salary of $48,324.00 per year.

4        20.    Without limitation, the employment relationship between Diana and Rio
5    Verde is evidenced by the nature of the work Diana was hired to perform for Rio Verde,
6    including:

7        (a)    She spent most of her time (more than 50%) performing tasks that did
8    not require any special knowledge or expertise;

9        (b)    She spent no time "managing" anyone;

10       (c)    She spent no time doing anything that required her to exercise her own
11   independent judgment or discretion;

12       (d)    Her actual job was essentially a mail clerk – to accept deliveries of
13   letters and packages sent to residents of Rio Verde and surrounding areas and to hand
14   them out to their recipients;

15       (e)    She weighed packages and sold stamps and postage;

16       (f)    She collected money for Rio Verde and made daily bank deposits on its
17   behalf;

18       (g)    She occasionally sealed Rio Verde's mailings, put postage on them, and
19   mailed them out at its request;

20       (h)    She did not have the power to hire, supervise, discipline or fire other Rio
21   Verde employees; and.

22       (i)    She generally interacted with the residents of Rio Verde and surrounding
23   areas, acting as the "face" of Rio Verde and its day-to-day goodwill social connection to
24   its many residents;

25       21.    Without limitation, the employment relationship between Diana and Rio
26   Verde is evidenced by the control and direction that Rio Verde exercised, or was able to
27   exercise, including:

28

JABURG | WILK
Attorneys at Law

3

(a)     Rio Verde provided Diana with a mandatory place to work;

(b)     She was not allowed to conduct any other business or do any work other than what Rio Verde employed her to do at that place;

(c)     She was at all times subject to Rio Verde's control, direction and right to control her work in fact and in practice;

(d)     She was at all times subject to the control, management and direction of her supervisor, Doris Findling, Rio Verde's Controller.

(e)     She was at all times required to adhere to and follow all USPO rules, regulations and polices, which were adopted, imposed or passed on her, and enforced by Rio Verde;

(f)     Rio Verde at all times dictated, scheduled and controlled the days and hours she was required to work during each work week;

(g)     Rio Verde paid for and provided the equipment, tools, furnishings and supplies she needed to perform her duties, including, without limitation, a postage meter, a scale, a wheeled sorter, a letter sorter, a bag rack, a safe, a cash register, all furniture, a rolling cart, a dolly, wire letter baskets, a typewriter table, and a printer and tablet.

(h)     Rio Verde was responsible for maintaining and cleaning the building where she worked;

(i)     Rio Verde imposed a form of dress code on her;

(j)     Her work has been a regular, integral part of Rio Verde's business and operations, and she performed the work in the usual and regular course of its business;

(k)     The duration of her 2019 contract is 12 months;

22.     Without limitation, the employment relationship between Diana and Rio Verde is evidenced by the economic realities of that relationship, which include:

(a)     Rio Verde held Diana out as an employee, a part of the organization;

1    (b)    Her 2019 contract does not compensate her per task performed; Rio
2    Verde paid her an annual salary of $48,324.00/year; $4,027.00/month; $1,006.74/week;

3    (c)    As set forth in detail below, she regularly worked more than a full-time
4    schedule; she regularly worked more than 40 hours per work week;

5    (d)    RIO Verde at all times was aware that she regularly worked more than
6    40 hours per work week.

7    23.    Accordingly, Diana is and always has been an employee of Rio Verde.

8                    <u>Rio Verde Willfully Never Paid Overtime Pay to Diana</u>

9    24.    Rio Verde is a business engaged in interstate commerce.

10   25.    During the entire 23 years Diana worked for Rio Verde, Rio Verde has
11   never complied or attempted to comply with 29 U.S.C. §207 (the "FLSA Overtime
12   Provisions").

13   26.    Rio Verde has always been aware of the FLSA Overtime Provisions.

14   27.    Rio Verde's continuing violations of the FLSA Overtime Provisions have
15   always been willful in that, *inter alia*, Rio Verde knew or showed reckless disregard for
16   whether its actions violated the FLSA.

17   28.    Rio Verde has always been aware that Diana has regularly worked more
18   than 40 hours per workweek.

19   29.    Rio Verde has never kept adequate records or any records of the hours per
20   workweek Diana has worked, including for the three-year period relevant to her FLSA
21   claims (the "Relevant Three-Year Period").

22   30.    Diana has created a reasonably accurate, good faith summary of the hours
23   she worked per workweek, attached as <u>Exhibit A</u> to this Complaint.

24   31.    As set forth and calculated on <u>Exhibit A</u>, Diana worked a total of 1,173.5
25   overtime hours, during the Relevant Three-Year Period and Rio Verde willfully failed
26   to pay her a total amount of not less than $48,896.48 in overtime pay during the
27   Relevant Three-Year Period.

28

                                            5

32.     Based on her salary of $48,324.00 per year, Diana earned $4,027.00 per month, $929.00 per workweek.  Her average regular rate of pay per non-overtime hour, therefore, was $23.23 per hour.

33.     Based on the forgoing facts and the nature of her job, Diana was never an exempt employee for purposes of the FLSA Overtime Provisions.

34.     Federal law requires all employers such as Rio Verde to pay non-exempt employees for all hours worked in excess of 40 hours per workweek at the rate of 1.5 times an employee's normal, regular rate of pay.

35.     Accordingly, Rio Verde willfully failed to pay Diana a total of not less than 1,173.5 hours x ($23.23 x 1.5% = $34.85 per hour) = $40,896.48 in overtime pay during the Relevant Three-Year Period.

36.     Federal law further mandates liquidated damages for an employer's failure to pay overtime pay.

37.     Accordingly, pursuant to the FLSA Overtime Provisions, Rio Verde is liable to Diana for not less than $40,896.48 x 2 = $81.792.95 in statutory liquidated damages during the Relevant Three-Year Period, as mandated by federal law.

<u>Rio Verde Wrongfully Forced Diana to Hire Someone<br>to Help to Keep Up with Her Workload</u>

38.     In 2018, Diana's workload and hours working were taking a heavy toll on her health and welfare, and she asked Rio Verde to provide her with help.

39.     Due to health conditions and the time required to fulfill her job duties, Diana could not physically continue to fulfill her job duties without help.

40.     She requested help, but Rio Verde told her that it was her responsibility to obtain and pay for the help she requested out of her own salary.

41.     With no other viable option, beginning in or about March 2018, in order to keep her job and continue to fulfill her job duties, Diana obtained an assistant to help

1   her work at the Rio Verde Post Office, Jan McNally, who she paid approximately

2   $13.00 per hour to assist her from then through April 2019.

3       42.     In November 2019, again with no other viable option, in order to continue

4   to fulfill her job duties, Diana obtained another assistant to help her work at the Rio

5   Verde Post Office, Heidi Middleton, who she also paid approximately $13.00 per hour

6   to assist her from then through March 2020.

7       43.     Diana has calculated the total amounts she paid Ms. McNally and Ms.

8   Middleton to help her: to Ms. Ms. McNally, from April 14, 2017 through April 19, 2019

9   = 591.5 hours at $13.00/hr. 7 = $7,727.50; and to Ms. Middleton, from November 12,

10  2019, through March 23, 2020 = 152 hours at $13.00/hr. = $2,012.00, for a total amount

11  of $9,739.50, calculated and set forth on Exhibit B to this Complaint.

12      44.     Diana would not have had to hire Ms. McNally or Ms. Middleton to help

13  her during this period but for Rio Verde's wrongfully misclassifying and treating her as

14  an independent contractor rather than an employee.

15      45.     Diana has suffered out-of-pocket losses and damages in a total principal

16  amount of $9,739.50 as the result of Rio Verde's wrongful misclassification.

17              Rio Verde Wrongfully Terminated Diana Under State Law

18      46.     Despite her 23 years of faithful service, Rio Verde terminated Diana on

19  April 3, 2020, under the following circumstances.

20      47.     In the midst of the current novel coronavirus Covid-19 pandemic, in early

21  to mid-March 2020, Diana complained to Rio Verde about her working conditions, in

22  particular its failure and refusal to provide a clean, healthy and safe workplace in light

23  of the Covid-19 pandemic and the Governor's shut-down and stay-at-home orders.

24      48.     She complained on behalf of herself and the more than 1,000 residents of

25  Rio Verde and the surrounding communities.

26      49.     Rio Verde ignored her complaints and refused to allow her to shut down

27  the Rio Verde Post Office, even temporarily, or to properly clean or sanitize her

28

7

1   workplace for her benefit as well as the benefit of the public and the Post Office
2   customers who regularly frequented her workplace and regularly grouped together and
3   came into contact with her.

4          50.     As conditions worsened, Diana became alarmed and continued to press
5   Rio Verde to close the Rio Verde Post Office or, at the very least, properly clean and
6   sanitize her workplace for her benefit as well as its Rio Verde Post Office customers.
7   She also requested that Rio Verde install Plexiglas widows, but Rio Verdi refused to
8   implement any of her requests, at least until after it terminated her.

9          51.     On or about March 25, 2020, at around 8:00 a.m., Diana talked to Doris
10  Findling, her supervisor, to report that a homeowner had called to say he and his wife
11  were sick and that his neighbor did not feel comfortable using his Post Office key.  She
12  also reported to Ms. Findling that four of the five Fountain Hills mail carriers who had
13  been sent home had one her collections the week before.

14         52.     Later that same day, at around 12:00 p.m., Ms. Findling and Dick Bush,
15  the Rio Verde President, called her back. Mr. Bush was unsympathetic. He accused her
16  of spreading rumors and told her to call 911 if she did not feel well.

17         53.     Later that same day, the Rio Verde area Fire District sent out a notice
18  addressing rumors that the a member of the community had tested positive for the
19  Covid-19 virus.

20         54.     On or about that same day, Rio Verde President sent out a notice to its
21  1,000 + residents that its annual meeting would be held by teleconference and reported
22  that Rio Verde had met with a Mayo Clinic physician, Dr. Brand, who re-emphasized
23  that Rio Verde residents be advised to call 911 if they experience Covid-19 symptoms;
24  Rio Verde's President specifically ad advised its residents: "**To be safe, we should all**
25  **act as if COVID-19 is here**."

26         55.     Diana's supervisor, Ms. Findling, and chastised Diana for complaining
27  and refused to do anything about the concerns she was repeatedly complaining about.

28

8

56.     Diana's complaints were disclosures she made in a reasonable manner that she had information or a reasonable belief that Rio Verde had violated, or was violating, or would violate the Arizona Constitution and statutes of this state, including, without limitation, A.R.S. § 23-403(A) (employer's duty to protect employees from workplace hazards); A.R.S. § 36-181, *et seq*. (regarding the public protection authority of local health agencies) and attendant regulations, A.R.S. § 36-601 (public nuisances dangerous to public health), A.R.S. § 36-787 (public health emergencies), and A.R.S. § 36-788 (isolation and quarantine during a state of emergency).

57.     Doris Findling was a Rio Verde officer and management representative who Diana reasonably believed was in a managerial or supervisory position and had the authority to investigate the information provided by her and to take action to prevent any further violations of the Arizona Constitution and statutes of this state.

58.     On or about March 30, 2020, Rio Verde sent out another notice to its 1,000 + residents for the week of March 30 – April 6 informing them that the Rio Verde Board and staff "continue to discuss and modify its proactive plan to protect our Community" and that its Community Center and pool and its Rio Lane Pool and Sport Complex was closed until further notice.

59.     The Rio Verde March 30, 2020, notice further advised its residents that its Rio Verde Post Office would remain open, subject to some "simple guidelines," including limiting then number of people at the Post Office.

60.     Diana further complained to Doris Findling and insisted that her health and safety and the health and safety of the Rio Verde Post Office residents be protected by closing it down, as it had appropriately done with other community facilities.

61.     Ms. Findling's response to Diana this time was to suggest that she find a replacement who was younger and healthier to continue operating the Post Office.

62.     On or about March 30, 2020, frustrated, concerned and alarmed, Diana took matters into her own hands and sent a letter to Ms. Findling, her supervisor, to

inform her that the Rio Verde Post Office would be temporarily closed until further notice, that Rio Verde had failed to acknowledge the Post office as one of its high-risk areas, and that she personally was at an even higher risk because of her age and a pre-existing condition.

63.     Rio Verde management did not appreciate Diana's effort to do what Rio Verde should have done to comply with government orders and Arizona law to protect her health and safety and the health and safety of its residents.

64.     On or about March 30, 2020, Diana was unceremoniously escorted out of the Rio Verde Post office building and asked to surrender her keys.

65.     On or about April 3, 2020, the USPO postal workers union and the local news media reported that five (5) postal workers in the nearby Town of Fountain Hills had tested positive for the Covid-19 virus.

66.     On or about that same day, April 3, 2020, Diana sent out a second letter to the Rio Verde Board of Directors, alerting them to these urgent health and safety issues and explaining that her March 30, 2020, letter was not a letter of resignation.

67.     On or about April 3, 2020, Rio Verde terminated Diana because of and in retaliation for her complaints and efforts to protect her health and safety and the health and safety of its residents and for her "whistleblowing" on its reasonably perceived violations of the Arizona Constitution and Arizona statutes.

68.     To this day, the Rio Verde Board has not responded to her complaints.

69.     At no time during her employment since July 1, 2017, did Rio Verde provide Diana with paid sick time mandated by Arizona law.

70.     Diana is entitled to an award of her costs and attorney fees incurred in connection with this case pursuant to 29 U.S.C. § 216 with regard to her federal claims and, at her option, Article 12 of her contract with Rio Verde or A.R.S. § 12-341.0 and/or A.R.S. § 23-364(G).

71.     Plaintiff demands a jury trial of all claims and issues alleged.

10

**COUNT ONE**
**(Declaratory Judgment – Federal Law)**

72. Plaintiff alleges all prior allegations in this Complaint.

73. Pursuant to 28 U.S.C. § 2201, Diana is entitled to a declaratory judgment to declare her rights and the status of her legal relations with Rio Verde during all times relevant to her claims made in this case.

74. Specifically, based on the facts and factors set forth above, Diana seeks an order and declaration of this Court that, without limitation, in accordance with the applicable FLSA factor test, she has been at all relevant times a misclassified employee who has been and is entitled to the benefits of all federal laws pertaining to employee status, rights, wages and other benefits, including the FLSA, 29 U.S.C. §201 *et seq*., for all purposes of her federal law claims made in this case.

75. Pursuant to 29 U.S.C. §216(b), Rio Verde is liable to Diana for an award of her costs and attorney fees incurred in connection with this action.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

A. For an order and declaration of this Court that, without limitation, in accordance with the applicable FLSA factor test for determining employee status, Plaintiff is and has been at all relevant times a misclassified employee who has been and is entitled to the benefits of all federal laws pertaining to employee rights, wages and other benefits, including the FLSA, 29 U.S.C. §201, *et seq*., for all purposes of her federal law claims made in this case.

B. For an award of her costs and reasonable attorney fees; and

C. For such other and further relief as is proper and just.

**COUNT TWO**
**(Declaratory Judgment – State Law)**

76. Plaintiff alleges all prior allegations in this Complaint.

11

1    77.    Pursuant to A.R.S. § 12-1832, Diana is entitled to a declaratory judgment

2 to declare her rights and the status of her legal relations with Rio Verde during all times

3 relevant to her claims made in this case.

4    78.    Specifically, based on the facts set forth above, Diana seeks an order and

5 declaration of this Court that, without limitation, in accordance with the applicable

6 Arizona factor test for determining employee status under the Employment Protection

7 Act (EPA) and the state Paid Sick Time law, she was and at all relevant times has been

8 a misclassified employee who has been and is entitled to the benefits of all state laws

9 pertaining to employee status, rights, wages and other benefits, including the Arizona

10 Employment Protection Act (EPA),  A.R.S. § 23-1501, for all purposes of her state law

11 claims made in this case.

12    79.    Specifically, also based on the facts set forth above, Diana seeks an order

13 and declaration of this Court that, without limitation, her contract with Rio Verde was

14 not an independent contractor agreement, but was in substance a written employment

15 agreement subject to the laws of the State of Arizona.

16    80.    Pursuant to, at her option, Article 12 of her contract with Rio Verde or

17 A.R.S. § 12-341.01 and/or A.R.S. § 23-364(G), Rio Verde is liable to Diana for an

18 award of her costs and attorney fees incurred in connection with this action.

19    WHEREFORE, Plaintiff requests judgment against Defendant as follows:

20    A.    For an order and declaration of this Court that, without limitation,

21 in accordance with the applicable Arizona factor test for determining employee status

22 under the Employment Protection Act (EPA) and the state Paid Sick Time law, Plaintiff

23 was and at all relevant times has been a misclassified employee who has been and is

24 entitled to the benefits of all state laws pertaining to employee rights, wages and other

25 benefits, including the EPA, A.R.S. § 23-1501, for all purposes of her state law claims

26 made in this case.

27

28

12

B.      For an order and declaration of this Court that, without limitation, her contract with Rio Verde was not an independent contractor agreement, but was in substance a written employment agreement subject to the laws of the State of Arizona.

C.      For an award of her costs and reasonable attorney fees; and

D.      For such other and further relief as is proper and just.

## COUNT THREE
### (FLSA Overtime Pay Violations)

81.    Plaintiff alleges all prior allegations in this Complaint.

82.    Rio Verde is a business engaged in interstate commerce.

83.    Diana was at all relevant times a misclassified employee.

84.    As alleged, during the Relevant Three-Year Period, from April 3, 2017, through April 3, 2020, the date of her termination, Diana regularly worked more than 40 hours in each workweek.

85.    During the entire time 23 years Diana worked for Rio Verde, including during the Relevant Three-Year Period, Rio Verde has never complied or attempted to comply with 29 U.S.C. §207, the FLSA Overtime Provisions.

86.    Rio Verde has always been aware of the FLSA Overtime Provisions.

87.    Rio Verde's continuing violations of the FLSA Overtime Provisions have always been willful within the meaning of 29 U.S.C. §255(a) in that, *inter alia*, Rio Verde knew or showed reckless disregard for whether its actions violated the FLSA.

88.    Rio Verde has never kept adequate records or any records of the hours per workweek Diana has worked, including during the Relevant Three-Year Period.

89.    Diana has created a reasonably accurate, good faith summary of the hours she worked per workweek ("Summary"), attached as <u>Exhibit A</u> to this Complaint.

90.    As set forth and calculated on <u>Exhibit A</u>, based on her average regular rate of pay per non-overtime hour and the number of hours she worked in excess of 40 hours per workweek, Diana worked a total of 1,173.5 overtime hours, during the Relevant

13

Three-Year Period and Rio Verde willfully failed to pay her a total amount of not less than $48,896.48 in overtime pay during the Relevant Three-Year Period.

91.    Pursuant to the 29 U.S.C. §216(b), Rio Verde is liable to Diana for not less than $48,896.48 x 2 = $81.792.95 in statutory liquidated damages during the Relevant Three-Year Period, as mandated by federal law.

92.    Pursuant to 29 U.S.C. §216(b), Rio Verde is liable to Diana for an award of her costs and attorney fees incurred in connection with this action.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

A.    For statutory liquidated damages in the principal amount of not less than $81,792.95;

B.    For pre-judgment interest on all such amounts at the legal rate from the date of loss or damage though the date of judgment;

C.    For an award of her costs and reasonable attorney fees; and

D.    For such other and further relief as is proper and just.

## COUNT FOUR
### (Violation of the Arizona EPA)

93.    Plaintiff alleges all prior allegations in this Complaint.

94.    As alleged, despite her 23 years of faithful service, Rio Verde terminated Diana on April 3, 2020, under the following circumstances.

95.    In the midst of the current novel coronavirus Covid-19 pandemic, in early to mid-March 2020, Diana complained to Rio Verde about her working conditions, in particular its failure and refusal to provide a clean, healthy and safe workplace in light of the Covid-19 pandemic and the Governor's shut-down and stay-at-home orders.

96.    She complained on behalf of herself and the more than 1,000 residents of Rio Verde and the surrounding communities.

97.    Rio Verde ignored her complaints and refused to allow her to shut down the Rio Verde Post Office, even temporarily, or to properly clean or sanitize her

14

workplace for her benefit as well as the benefit of the public and the Post Office customers who regularly frequented her workplace and regularly grouped together and came into contact with her.

98.   As conditions worsened, Diana became continued to press Rio Verde to close the Rio Verde Post Office or, at the very least, properly clean and sanitize her workplace for her benefit as well as its Rio Verde Post Office customers.

99.   Diana's supervisor, Doris Findling, and chastised Diana for complaining and refused to do anything about the concerns she was repeatedly complaining about.

100.   Diana's complaints were disclosures she made in a reasonable manner that she had information or a reasonable belief that Rio Verde had violated, or was violating, or would violate the Arizona Constitution and statutes of this state, including, without limitation, A.R.S. § 23-403(A) (employer's duty to protect employees from workplace hazards); A.R.S. § 36-181, *et seq*. (regarding the public protection authority of local health agencies) and attendant regulations, A.R.S. § 36-601 (public nuisances dangerous to public health), A.R.S. § 36-787 (public health emergencies), and A.R.S. § 36-788 (isolation and quarantine during a state of emergency).

101.   Doris Findling was a Rio Verde officer and management representative who Diana reasonably believed was in a managerial or supervisory position and had the authority to investigate the information provided by her and to take action to prevent any further violations of the Arizona Constitution and statutes of this state.

102.   Diana further complained to Doris Findling and insisted that her health and safety and the health and safety of the Rio Verde Post Office residents be protected by closing it down, as it had appropriately done with other community facilities.

103.   Ms. Findling's response to Diana this time was to suggest that she find a replacement who was younger and healthier to continue operating the Post Office.

104.   On or about March 30, 2020, frustrated, concerned and alarmed, Diana took matters into her own hands and sent a letter to Ms. Findling, her supervisor, to

1  inform her that the Rio Verde Post Office would be temporarily closed until further

2  notice, that Rio Verde had failed to acknowledge the Post office as one of its high-risk

3  areas, and that she personally was at an even higher risk because of her age and a pre-

4  existing condition.

5          105.    Rio Verde management did not appreciate Diana's effort to do what Rio

6  Verde should have done to comply with government orders and Arizona law to protect

7  her health and safety and the health and safety of its residents.

8          106.    On or about March 30, 2020, Diana was unceremoniously escorted out of

9  the Rio Verde Post office building and asked to surrender her keys.

10         107.    On or about April 3, 2020, the USPO postal workers union and the local

11  news media reported that five (5) postal workers in the nearby Town of Fountain Hills

12  had tested positive for the Covid-19 virus.

13         108.    On or about that same day, April 3, 2020, Diana sent out a second letter to

14  the Rio Verde Board of Directors, alerting them to these urgent health and safety issues

15  and explaining that her March 30, 2020, letter was not a letter of resignation.

16         109.    On or about April 3, 2020, Rio Verde terminated Diana because of and in

17  retaliation for her complaints and efforts to protect her health and safety and the health

18  and safety of its residents and for her "whistleblowing" on its reasonably perceived

19  violations of the Arizona Constitution and Arizona statutes.

20         110.    Rio Verde's actions constitute wrongful termination in violation of A.R.S.

21  § 23-1501(A)(3)(c)(ii).

22         111.    Diana has sustained losses and damages as the result of her wrongful

23  termination, including, without limitation, lost back pay and benefits and front pay and

24  benefits in amounts sufficient to fully compensate Plaintiff for all lost wages and

25  benefits and all future lost wages and benefits to be proved at trial.

26         112.    Diana has also suffered losses and damages as the result of her wrongful

27  termination, including, without limitation, for emotional distress, pain and suffering,

28                                              16

JABURG|WILK
Attorneys at Law

harm to her status and reputation and other damages that she has incurred due to Defendant's conduct.

113.    Rio Verde's conduct described above evidences an evil mind, in that such conduct was willful, malicious and performed with the intent to harm Diana, or with a conscious disregard of the likelihood of such harm, and Diana is therefore entitled to an award of punitive damages in an amount sufficient to punish Rio Verde for its wrongful conduct and to discourage others from engaging in such wrongful conduct.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

A.      For an award of losses and damages in both back pay and benefits and front pay and benefits in amounts sufficient to fully compensate Plaintiff for all lost wages and benefits and all future lost wages and benefits to be proved at trial;

B.      For an award of losses and damages for her pain and suffering, emotional distress, harm to her reputation and other damages that she has incurred due to Defendant's conduct;

C.      For an award of punitive damages;

D.      For an award of her costs and reasonable attorney fees; and

E.      For such other and further relief as is proper and just.

## COUNT FIVE
### (Breach of Contract)

114.    Plaintiff alleges all prior allegations in this Complaint.

115.    As alleged, in 2017, Diana's workload and hours working were taking a heavy toll on her health and welfare.

116.    Due to health conditions and the time required to fulfill her job duties, Diana could not physically continue to fulfill her job duties without help.

117.    She asked Rio Verde to provide her with help.

118.    Rio Verde refused to provide her with the help she reasonably requested.

17

119.    From in or about March 2018 through March 2020, Diana had no other viable option but to obtain assistants to help her at the Rio Verde Post Office.

120.    Diana paid these assistants approximately $13.00 per hour to help her.

121.    Diana has calculated the total amounts she paid these assistants to help her a combined total of $9,739.50, set forth on <u>Exhibit B</u> to this Complaint.

122.    Diana would not have had to hire these assistants to help her during this period but for Rio Verde's wrongfully misclassifying and treating her as an independent contractor rather than an employee.

123.    Diana's contract with Rio Verde misclassifies her as an "independent contractor" rather than an employee.

124.    Diana's contract with Rio Verde is a written contract of employment.

125.    Every Arizona contract of employment contains a covenant of good faith and fair dealing implied by law as an essential term of the contract, whereby each party is obligated to act fairly and in good faith and to refrain from any acts to deny the other party the reasonable benefits of the contract.

126.    By failing and refusing to provide Diana with the help she requested and needed, Rio Verde breached her employment contract and the covenant of good faith and fair dealing by failing and refusing to pay her for the assistance she required to fulfill her duties and failing to act fairly and in good faith and instead acting to deny her the reasonable benefits of her contract.

127.    Diana has suffered losses and damages during the past 23 years comprised of, without limitation, lost employee benefits, paid unemployment taxes that should have been paid by Rio Verde, deprivation of workers' compensation insurance and benefits that should have been provided by Rio Verde and medical bills and associated costs she incurred because of that, and other losses and damages in amounts to be proved at trial.

18

128.    Pursuant to, at her option, Article 12 of her contract with Rio Verde or A.R.S. § 12-341.01 and/or A.R.S. § 23-364(G), Rio Verde is liable to Diana for an award of her costs and attorney fees incurred in connection with this action.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

A.    For an award of damages in an amount to be proved at trial;

B.    For prejudgment interest of all such liquidated amounts at the legal rate from the date the damages were incurred through the date of judgment;

C.    For an award of her costs and reasonable attorney fees; and

D.    For such other and further relief as is proper and just.

## COUNT SIX
### (Unjust Enrichment)

129.    Plaintiff alleges all prior allegations in this Complaint.

130.    As alleged, in 2018, Diana's workload and hours working were taking a heavy toll on her health and welfare.

131.    Rio Verde refused to provide her with the help she reasonably requested to be able to fulfill her job duties.

132.    From in or about April 2018 through March 2020, Diana had no other viable option but to obtain assistants to help her do her work at the Rio Verde Post Office.

133.    Diana paid these assistants approximately $13.00 per hour to help her.

134.    Diana has calculated the total amounts she paid these assistants to help her a combined total of $9,739.50, set forth on Exhibit B to this Complaint.

135.    Rio Verde has thus received a benefit in the amount of the fair value of the necessary services it caused Diana to obtain and pay for in order to fulfill her job duties for its benefit.

136.    Rio Verde has been enriched by the assistance Diana obtained and paid for, and Diana has been correspondingly impoverished.

JABURG|WILK
Attorneys at Law

19

137. There is no legal justification for Rio Verde's enrichment to the detriment of Diana.

138. It would be unconscionable and inequitable to permit Rio Verde to retain the value of the necessary services it caused Diana to obtain and pay for without compensating Diana.

139. Diana has suffered losses and damages during the past 23 years comprised of, without limitation, lost employee benefits, paid unemployment taxes that should have been paid by Rio Verde, deprivation of workers' compensation insurance and benefits that should have been provided by Rio Verde and medical bills and associated costs she incurred because of that, and other losses and damages, the reasonable or fair market value of which will be proved at trial.

140. Rio Verde is liable to Diana for an award of her costs and attorney fees incurred in connection with this action pursuant to A.R.S. § 12-341.01.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

      A.     For damages in an amount to be proved at trial;

      B.     For prejudgment interest of all such liquidated amounts at the legal rate from the date the damages were incurred through the date of judgment;

      C.     For an award of her costs and reasonable attorney fees; and

      D.     For such other and further relief as is proper and just.

## COUNT SEVEN
### (Breach of Federal and State Public Policies)

141. Plaintiff alleges all prior allegations in this Complaint.

142. Rio Verde at all relevant times owed Diana a duty of due care.

143. As alleged, Rio Verde misclassified her as an "independent contractor" rather than an employee.

144. Rio Verde's actions in misclassifying and treating her as an "independent contractor" rather than an employee were an intentional, reckless, grossly negligent or,

at a minimum, negligent disregard and violation of her rights under federal and state laws and public policies.

145.   Diana would not have had to hire these assistants to help her during this period but for Rio Verde's wrongfully misclassifying and treating her as an independent contractor rather than an employee.

146.   By failing and refusing to provide Diana with the help she requested and needed, Rio Verde breached federal and state public policies that require employers to hire and treat all employees as employees and to refrain from misclassifying them as purported independent contractors.

147.   Diana has suffered losses and damages during the past 23 years comprised of, without limitation, lost employee benefits, paid unemployment taxes that should have been paid by Rio Verde, deprivation of workers' compensation insurance and benefits that should have been provided by Rio Verde and medical bills and associated costs she incurred because of that, and other losses and damages in amounts to be proved at trial.

148.   Diana has also suffered damages for, without limitation, her deteriorated health, pain and suffering and emotional distress in an amount to be proved at trial.

149.   Rio Verde's conduct described above evidences an evil mind, in that such conduct was willful, malicious and performed with the intent to harm Diana, or with a conscious disregard of the likelihood of such harm, and Diana is therefore entitled to an award of punitive damages in an amount sufficient to punish Rio Verde for its wrongful conduct and to discourage others from engaging in such wrongful conduct.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

A.   For damages in an amount to be proved at trial;

B.   For an award of punitive damages;

C.   For an award of her costs and reasonable attorney fees; and

D.   For such other and further relief as is proper and just.

21

1

2

**COUNT EIGHT**
**(Violation of Arizona Paid Sick Time Law)**

3      150.   Plaintiff alleges all prior allegations in this Complaint.

4      151.   Rio Verde employs 15 or more employees and was at all relevant times

5  since July 1, 2017, was required to comply with A.R.S. § 23-371, *et seq.* (the "Arizona

6  PST Law") to provide Diana with 40 hours of paid sick time per year.

7      152.   Diana's was entitled receive to such benefits at all relevant times since

8  July 1, 2017, during her employment with Rio Verde.

9      153.   At no time during Diana's employment with Rio Verde since July 1, 2017,

10  did Rio Verde provide Diana with the paid sick time mandated by Arizona law.

11      154.   Rio Verde's failure to provide Diana with the paid sick time mandated by

12  the Arizona PST Law, including, without limitation, the anti-discrimination provisions

13  of A.R.S. § 23-372, A.R.S. § 23-374, and A.R.S. § 23-375.

14      155.   Rio Verde's failure to provide Diana with the paid sick time mandated by

15  the Arizona PST Law entitled Diana to the amount of unpaid sick time for the last three

16  years, plus two times that amount as liquidated damages.

17      156.   Pursuant to, at her option, Article 12 of her contract with Rio Verde or

18  A.R.S. § 12-341.01 and/or A.R.S. § 23-364(G), Rio Verde is liable to Diana for an

19  award of her costs and attorney fees incurred in connection with this action.

20      WHEREFORE, Plaintiff requests judgment against Defendant as follows:

21      A.   For statutory liquidated damages pursuant to A.R.S. § 230-364(G)

22  in the principal amount of $150.00 per day from July 1, 2017, though the date of entry

23  of judgment;

24      B.   For pre-judgment interest on all such amounts at the legal rate from

25  July 1, 2017, though the date of judgment;

26      C.   For an award of her costs and reasonable attorney fees; and

27      D.   For such other and further relief as is proper and just.

28

22

1       DATED this 11th day of June, 2020.

2                        **Jaburg & Wilk, P.C.**

*/s/ David N. Farren*

Jeffrey A. Silence
David N. Farren
Alden A. Thomas
Attorneys for Plaintiff

JABURG|WILK
Attorneys at Law

23